IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RODNEY BOOMER, | : | CIVIL NO. 3:06-CV-0850 |
| | : | |
| Plaintiff | : | (Judge Vanaskie) |
| | : | |
| v. | : | |
| | : | |
| SGT. HARRY LEWIS, et al., | : | |
| | : | |
| Defendants | : | |

MEMORANDUM

I. BACKGROUND

Plaintiff commenced this civil rights action by filing a complaint on April 25, 2006.

Plaintiff later filed amended complaints on September 29, 2006 (Dkt. 76), and January 12,

2007. (Dkt. 109.)[1] Plaintiff's claims concern more than a dozen discrete incidents that

occurred during his initial arrest by the Pocono Mountain Police Department and his

subsequent incarceration as a federal court pretrial detainee in the Lackawanna County

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format,
hyperlinks to the Court's record and to authority cited herein have been inserted. The Court
accepts no responsibility for, and does not endorse, any product, organization, or content at
any hyperlinked site, or at any site to which that site might be linked. The Court accepts no
responsibility for the availability or functionality of any hyperlink. Thus, the fact that a
hyperlink ceases to work or directs the user to some other site does not affect the opinion of
the Court.

Prison ("LCP"), and the Pike County Correctional Facility ("PCCF").[2]  Following various

pretrial rulings, there remain six separately represented groups of Defendants.  The groups

of Defendants are as follows: (1) the Pocono Mountain Regional Police Department

Defendants, consisting of the Police Department itself, former Chief of Police John P.

Lamberton, Sergeant Harry Lewis, and Police Department members Michael Robson,

Michael Rice, Daniel Smelas, Jeffery Lutz, and Richello Stapleton; (2) LCP Medical

Defendants, consisting of Barbara Fox, L.P.N., and Dr. Edward Zaloga; (3) LCP Officers,

consisting of Warden Janine Donate, C.O. Columbia, Lt. Walsh, and Sgt. Yavoroski; (4)

PrimeCare Medical, Inc., and its employees, Patti Bunting, and Dr. William Sprague, who

provided health care services at the PCCF; (5) PCCF Nurses, consisting of William Checho,

Susan Shaffer, and Catherine Moreiko; and (6) the PCCF, along with Warden Craig Lowe,

Assistant Warden Romance, Lt. Kumburis, Ms. Lastarza, Lt. Campos, Lt. Gattuso, Sgt.

DeMarco, C.O. Francis, C.O. Schwartz, and C.O. Schappert.  (This last group of

Defendants will be referred collectively to as the "PCCF Defendants.")  Each group has

moved for summary judgment.  On April 1, 2006, Magistrate Judge J. Andrew Smyser

issued a comprehensive Report and Recommendation addressing each of the summary

---

[2] Plaintiff pled guilty before the Hon. Edwin M. Kosik of this Court to conspiracy to distribute controlled substances, and was sentenced on October 20, 2008, to a prison term of 211 months.  He is presently incarcerated at the Federal Correctional Facility at Gilmer, Glenville, West Virginia.

judgment motions as well as a motion for sanctions filed by Gerard Maritato, M.D.[3] (Dkt.

545.)  Magistrate Judge Smyser recommended granting the motions for summary judgment

filed on behalf of the LCP Medical Defendants, the LCP Officers, the Prime Care Medical

Defendants, and the PCCF Nurses.  As to the Pocono Mountain Regional Police

Department Defendants and the PCCF Defendants, he recommended granting the motions

in part.  Finally, Magistrate Judge Smyser recommended denying the motion for sanctions.

The matter is now before this Court on objections filed by Plaintiff (Dkt. 546); PCCF Officers

Francis, Kumburis, Campos, and Shepard (Dkt. 547); and the Pocono Mountain Regional

Police Department Defendants (Dkt. 553).

## II.  STANDARD OF REVIEW

Where, as here, objections to a Magistrate Judge's Report and Recommendation are

filed, the court must perform a *de novo* review of the contested portions of the Report.  See,

e.g., Sample v. Diecks, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989) (citing 28 U.S.C.

636(b)(1)(C)). Although review is *de novo*, the Court is permitted to "rely upon the

Magistrate Judge's proposed findings and recommendations to the extent [it], in the

exercise of sound discretion, deem[s] proper." Owens v. Beard, 829 F.Supp. 736, 738

(M.D. Pa. 1993) (citing United States v. Raddatz, 447 U.S. 667, 676 (1980); Goney v. Clark,

749 F.2d 5, 7 (3d Cir. 1984)). To trigger *de novo* review, however, the objections must be

---

[3] Dr. Maritato was dismissed from this action by Order filed July 2, 2008.  (Dkt. 405.)

specific. See, e.g., Goney, 749 F.2d at 6-7.  In this regard, Local Rule of Court 72.3 requires "written objections which . . . specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for those objections." Where only general objections are asserted, review may properly be limited to ascertaining whether there is "clear error" or "manifest injustice" in the Report and Recommendation. See Shields v. Astrue, No. 3:CV-07-417, 2008 WL 4186951, at *6, *9 (M.D. Pa. Sept. 8, 2008).

A.    Plaintiff's Objections

Plaintiff objects to the Report and Recommendation on the ground that Magistrate Judge Smyser erred in treating Local Rule of Court 56.1 Statements of Material Facts as undisputed because Plaintiff failed to respond to them.  Plaintiff observes that he had relied upon his verified second amended complaint (Dkt. 109),[4] as well as exhibits he submitted (Dkts. 534 through 536).  Plaintiff, however, did not respond to the Statements of Material Fact as required by Local Rule of Court 56. 1, which provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."

_____

[4] Plaintiff has also provided a sworn declaration and verification of his civil complaint. (Dkt. 479.)  A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.  Wilson v. Maben, 676 F. Supp. 581, 583 (M.D. Pa. 1987); Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985).

Plaintiff was required to respond to the numbered paragraphs of the moving parties'

statements of material fact, indicating specifically what facts were disputed and identifying

the part of the record that sufficed to create a genuine dispute of fact material to the

outcome of a particular claim. His failure to comply with Local Rule of Court 56.1 provided

ample justification for Magistrate Judge Smyser's treatment of the moving parties'

Statements of Material Fact as undisputed. Accordingly, this objection is overruled.

Furthermore, as Plaintiff has not complied with Local Rule of Court 72.3 by specifying

particular findings made by the Magistrate Judge to which he objects, review of the record

in connection with the parts of the Report and Recommendation adverse to Plaintiff will be

limited to ascertaining whether is "clear error" or a result that is "manifestly unjust." See

Shields, 2008 WL 4186951, at *6, *9 (M.D. Pa. Sept. 8, 2008).

     B.    <u>Defense Objections</u>

_____Those Defendants who have objected to the Report and Recommendation have

specified the parts of the Magistrate Judge's analysis to which they take exception.

Accordingly, review of the record dealing with the pertinent parts of the record will be *de

novo.*

<u>III. DISCUSSION</u>

     A.    <u>Pocono Mountain Regional Police Department Motion</u>

On February 20, 2006, at approximately 2:00 p.m, Cathy Boomer, Plaintiff's wife,

called the Pocono Mountain Regional Police Department, claiming that the Department had property that belonged to her, and sought to pick it up. (Id.) Defendant Robson discovered from Defendant Lewis that the Bureau of Alcohol, Tobacco and Firearms (ATF) had issued warrants for the arrest of Plaintiff and Mrs. Boomer as a result of a federal grand jury indictment. (Id. at ¶9.)

Defendant Robson asked Plaintiff and Mrs. Boomer to come to the police station the next day, February 21, 2006. (Dkt. 464, at ¶11; Dkt. 109, at 3.) Plaintiff and Mrs. Boomer arrived at the police station and were escorted into an interview room where they were advised that they were under arrest based on warrants issued by the ATF. (Dkt. 464, ¶12; Dkt. 109, at 3.) Mrs. Boomer was handcuffed and placed in a holding cell without incident. (Dkt. 464, at ¶14.) Plaintiff, however, screamed "this is b[******]t and I want to see the warrants," was argumentative, and after officers mistakenly began to place him in his wife's cell, believing it to be unoccupied, demanded to be placed in the cell with his wife. (Id. at ¶13, ¶15.) Plaintiff pulled away from Robson and demanded to be placed in the cell with his wife and Robson told Plaintiff he was not allowed in the cell. (Id. at ¶16.) Plaintiff continued to pull away as Robson again informed him he was not allowed in the cell. (Id. at ¶17.) Plaintiff yelled in Robson's face, "who the f[**]k do you think you are, don't f[*****]g touch me man." (Id. at ¶18.) Defendant Robson told Plaintiff to sit on the bench several times so that Plaintiff's leg could be cuffed to the bench, but Plaintiff did not comply and continued

screaming in Robson's face. (Id. at ¶11.)

In his second amended complaint, Plaintiff alleges that he informed Defendant Lewis that he could not be handcuffed behind his back due to spinal problems resulting from a car accident, and that he required a cane to ambulate.[5] (Id. at 3.) Defendant Lewis handcuffed Plaintiff with his hands behind his back, and then allegedly "mishandled him" while placing him inside the holding cell. (Id. at 3.)

Plaintiff states that while awaiting the arrival of the ATF agents to take the Boomers into custody, he experienced a violent epileptic seizure that caused him to bang against concrete and steel. (Dkt. 109, at 4.) Defendants Lewis, Stapleton and Robson proceeded to the cell, and Robson called the Communications Center by radio, requesting an ambulance and Advanced Life Support unit for Plaintiff who was possibly experiencing seizures. (Id. at ¶27.) After Lewis and Robson lifted Plaintiff's head from the bench and removed a handcuff, Plaintiff regained consciousness and began arguing with Lewis. (Id. at ¶28.) Plaintiff was then handcuffed in front and hooked to a belly belt with the handcuffs in front. (Id. at ¶29.) Plaintiff replied "yes" when asked if he was alright, and was given a glass of water when he requested one. (Id. at ¶30.)

The ambulance arrived at the police station and while being examined, Plaintiff and

---

[5] Evidently, Plaintiff was able to walk into the police department without his cane as he admits that the cane was in his car when he was arrested.

Mrs. Boomer stated their backs hurt from a previous automobile accident.  (Id. at ¶31.)

Plaintiff was uncooperative with the ambulance personnel, who stayed at the police station

until the ATF arrived, and did not request treatment.  (Id.)  Plaintiff states that the "EMS

persons" did nothing more than flash a light into his eyes.  (Dkt. 109, at 5.)  Plaintiff alleges

that video/audio cameras located inside both holding cells captured these events on film.

(Id. at 4.) Plaintiff states that he was not transported to an emergency room for evaluation or

treatment for his violent seizure that resulted in serious spinal injuries.  (Id. at 5.)

The Defendants moved for summary judgment on two claims: the claim against

Defendant Lamberton for being in charge of the Police Department and the claim arising

from the alleged insufficient medical care after Plaintiff's seizure.  (Dkt. 462.)  Magistrate

Judge Smyser recommended granting Defendants' motion as to both claims.  Magistrate

Judge Smyser, interpreting the second amended complaint as asserting an excessive force

claim that the parties had not addressed, recommended that the case proceed against all

Pocono Mountain Regional Police Department Defendants with the exception of Chief

Lamberton.

The Pocono Mountain Regional Police Department Defendants object to Magistrate

Judge Smyser's finding that Plaintiff asserted an excessive force claim.  (See Dkt. 553 &

554.)  Defendants also argue that even if such a claim could be gleaned from the second

amended complaint, the claim would fail.

8

Magistrate Judge Smyser's recommendation to grant summary judgment in favor of Defendant Lamberton will be adopted. Plaintiff has provided no evidence Lamberton was in any way involved in his arrest, other than the fact that Lamberton was the head of the Police Department. Because "[i]t is . . . well established that a defendant in a civil rights case cannot be held responsible for a constitutional violation which he or she neither participated in nor approved," Magistrate Judge Smyser correctly ruled that Defendant has shown no reasonable trier of fact could find for Plaintiff and that Lamberton is entitled to summary judgment. See C.H. ex. rel. Z.H. v. Oliva, 226 F.3d 198, 201 (3d Cir. 2000).

Magistrate Judge Smyser recommended granting summary judgment in favor of the Pocono Mountain Regional Police Department Defendants on the failure to provide medical care in response to Plaintiff's seizure, and this recommendation will also be adopted.

There is no dispute that Defendants promptly called an ambulance and the ambulance arrived and Plaintiff was examined. There is no evidence that any of the Pocono Mountain Regional Police Department Defendants prevented or impeded Plaintiff from being examined by the ambulance attendants. Accordingly, as there is no evidentiary basis for a claim of deliberate indifference to serious medical needs, the recommendation to grant summary judgment in favor of the Pocono Mountain Regional Police Department Defendants on this claim will be adopted.

As noted above, Magistrate Judge Smyser found an excessive force claim asserted

against the Pocono Mountain Regional Police Department Defendants in connection with

Plaintiff being handcuffed behind his back and shackled to a steel bench. (Dkt. 545, at 17.)

Defendants contend that no such claim was presented in the second amended complaint.

Plaintiff's second amended complaint alleges that he informed Defendants not to cuff

him behind his back, and that they ignored his request. He further asserts in conclusory

fashion that he was "mishandled." These averments do not suffice to support an inference

that any member of the Pocono Mountain Regional Police Department used excessive force

in placing Plaintiff in restraints. In this regard, the fact that a belligerent person being taken

into custody demands to be cuffed in front of his waist does not mean that a denial of this

demand is tantamount to use of excessive force. A law enforcement officer is not required

to abandon standard restraint protocols at the demand of the person being arrested. And

the bare assertion of being "mishandled" does not suffice to state a claim of excessive

force.

Federal Rule of Civil Procedure 8(a)(2) requires that, in order to state a claim, a

pleading must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief," which "'give[s] the defendant fair notice of what the . . . claim is and the

grounds upon which it rests.'" Bell Atl. Cop. v. Twombly, 550 U.S. 544, 545 (2007) (citing

Conley v. Gibson, 355 U.S. 41, 47 (1957)). In this regard, "[a] party must state its claims

. . . in numbered paragraphs, each limited to a single set of circumstances" and, "if doing so

would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count . . . ." Fed. R. Civ. P. 10(b).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  Twombly, 550 U.S. at 547.  Although *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by lawyers, the complaint must still put the defendants on notice as to the claims against them, and must include specific facts, not mere allegations, in support of the claims. Haines v. Kerner, 404 U.S. 519, 521 (1972).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not 'shown' – 'that the pleader is entitled to relief.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (May 18, 2009).

In this case, the Pocono Mountain Regional Police Department Defendants cannot be faulted for failing to address an excessive force claim in their summary judgment motion because no such claim is apparent from the face of the second amended complaint. Alleging that he was "mishandled" is not sufficient.  Asserting that it was "cruel and unusual" to cuff Plaintiff behind his back is also insufficient to state a viable excessive force claim.  In this regard, there is no averment that the cuffs were too tight and were used in such a manner as intending to cause pain.  Compare Kopec v. Tate, 361 F.3d 772, 774 (3d Cir. 2004) (plaintiff alleged that handcuffs were put on so tightly that "he suffered permanent

nerve damage to his right wrist"). The Third Circuit cautioned that its denial of summary

judgment in that case was not intended "to open the floodgates to a torrent of handcuff

claims." Id. at 777. In this case, the mere averment that Plaintiff was cuffed behind his

back as opposed to in front of his waist does not suffice to suggest excessive use of force.

What is clear is that Plaintiff complained of the lack of medical attention he received as a

result of his seizure, and the Pocono Mountain Regional Police Department Defendants

plainly established a right to summary judgment on that claim. Under these circumstances,

the Pocono Mountain Regional Police Department Defendants' objection to the Report and

Recommendation will be sustained, and their motion for summary judgment will be granted.

      B.     The LCP Medical Defendants' Motion

     Plaintiff's allegations against Defendants Fox and Zaloga surround events occurring

while he was a federal detainee at the LCP from February 21 through March 10, 2006,

March 17 through March 24, 2006, and April 24 through April 28, 2006. (Dkt. 458, at ¶2.)

Plaintiff alleges that immediately following his arrest, while housed at the LCP, nurse

administrator Fox and Dr. Zaloga ignored his medical needs and failed to provide adequate

medical treatment. (Dkt. 109, at 6-11.) Plaintiff alleges that he had another epileptic

seizure in the prison's medical housing unit on either February 22, or 23, 2006. (Id. at 7.)

He also allegedly had another seizure on or about March 5, 2006, at the prison. (Id.)

Plaintiff alleges that Fox and Dr. Zaloga refused to provide the appropriate treatments and

diagnostic tests to determine whether he sustained injuries as a result of the seizures. (Id.)

According to Fox and Dr. Zaloga, Plaintiff was provided medication while in the prison, including Dilantin, Motrin, Naprosyn, Atenolol, Tenormin, Adalat, Clindamycin and Tylenol. (Dkt. 458, ¶ 3-4; see Dkt. 456-3, at 9-40 (logs of medication provided); Dkt. 456-5, at 60-62 (Plaintiff's deposition).) Dr. Zaloga performed blood tests on Plaintiff and changed Plaintiff's medication in response to the results of the test. (Dkt. 458, at ¶ 5; see Dkt. 456-3, at 4-5.) According to Defendants, Plaintiff refused to take his medication, or was noncompliant in taking his medication, on numerous occasions. (Dkt. 458, at ¶ 6; see Dkt. 456-3, at 9-25 (logs showing Plaintiff refused to take medication).) Magistrate Judge Smyser, concluding that Plaintiff "has not presented evidence from which a reasonable trier of fact could conclude that defendants Zaloga and Fox were deliberately indifferent to his medical needs," recommended that summary judgment be granted in their favor. (Dkt. 545, at 22.)

In the present case, Plaintiff has provided no competent evidence of any deliberate indifference of Zaloga or Fox to his medical conditions. Plaintiff's submissions, in fact, tend to show that an appropriate degree of care was provided. Plaintiff's "Exhibit B" contains reports and forms from the Lackawanna County Prison that show Plaintiff was given medical examinations, and that a form was issued within the prison to allow Plaintiff to use his cane. (Dkt. 534-3.) This submission also contains a letter from Dr. Matt Vegari that

13

says Plaintiff was receiving medication during the time period in question.

Plaintiff bears the burden of proving deliberate indifference to serious medical needs, and has failed to provide the evidence necessary to create a genuine issue of material fact. In addition, Defendants have provided affirmative evidence that proper care was provided. Therefore, the recommendation to grant summary judgment in favor of Defendants Fox and Dr. Zaloga will be adopted.

C.    The LCP Officers

Plaintiff allegedly suffered a seizure while at the William J. Nealon Federal Courthouse on March 21, 2006. (Dkt. 109, at 10.) Plaintiff was brought by ambulance to the emergency room at Mercy Hospital. (Id. at 12.) Defendants Yavoroski and Columbia went to Mercy Hospital to transport Plaintiff back to the Lackawanna County Prison. (Id. at 14.) Plaintiff alleges that he was grabbed out of his hospital bed by Defendants Yavoroski and Columbia, placed in a wheelchair, and brought to a car where he was "thrown" into the back seat. (Id.) Plaintiff alleges he was put into solitary-confinement status pending disciplinary charges for allegedly refusing to get up and walk out of Mercy Hospital. (Id. at 15.) Plaintiff alleges he was kept "disciplinary confined" for approximately five (5) days without the issuance of an institutional misconduct report or disciplinary hearing "in accordance with due process of law". (Id.) Plaintiff testified at his deposition that he was cleared to leave the hospital by the medical staff, and not injured as a result of his removal.

14

(Dkt. 454-2, at 16-23.) Plaintiff also contradicts his second amended complaint by stating he was never placed in solitary confinement, but was just designated as having that status. (Id. at 19-20.)

Defendant Yavoroski, in his affidavit, states that although Plaintiff initially refused to leave the hospital, he did leave willingly and without a struggle. (Dkt. 454-3, at ¶ 2-4.) Yavoroski further states that Plaintiff "was placed in a medical special needs unit by virtue of the fact that he was utilizing a cane," but at no time was placed in solitary or disciplinary confinement. (Id. at ¶ 5.)

Defendant Donate is the Warden of the Lackawanna County Prison, and there are no allegations that Donate was involved in any of the alleged occurrences. Donate's involvement in the case stems from letters Plaintiff sent to her about not receiving appropriate medical care for his medical condition and having his cane taken from him. (Dkt. 109, at 8.) Defendant Walsh was the shift commander during the time of the incident, and Plaintiff alleges that he is responsible for the actions taken by Defendants Yavoroski and Columbia. (Dkt. 454-2, at 24.)

Magistrate Judge Smyser construed the allegations relating to the forced removal from the Hospital as a claim of excessive force, and the allegation of solitary confinement as a denial of due process rights. (Dkt. 545, at 24-25.) He concluded that Plaintiff had not presented evidence from which a reasonable trier of fact could conclude that excessive

force was used to remove him from the hospital or that Plaintiff was denied due process in connection with his cell assignment.

Plaintiff has provided no evidence that Defendant Donate knew, or had reason to believe, that Plaintiff was allegedly being mistreated by Fox and Dr. Zaloga.[6] As Magistrate Judge Smyser observed, the evidence introduced compels the opposite conclusion – that Fox and Dr. Zaloga were providing completely appropriate and sufficient care. (Dkt. 545, at 23.) Likewise, Plaintiff admits that Defendant Walsh's only involvement was being shift commander during the incident at Mercy Hospital. (Dkt. 454-2, at 24.) Considering the affirmative evidence provided by Defendants, a reasonable trier of fact could not conclude that Defendant Donate was deliberately indifferent to Plaintiff's serious medical needs, or that Defendant Walsh was responsible for any actions taken by his subordinates. Therefore, the recommendation to grant summary judgment in favor of Donate and Walsh will be adopted.

With respect to the excessive force claim against Defendants Yavoroski and Columbia, Plaintiff acknowledged in his deposition that he experienced no pain as a result

---

[6] Prison official defendants cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

of the alleged actions.  (Dkt. 454-2, at 23.)  Given this evidence, even when viewed in a light

most favorable to Plaintiff, there is no basis for a reliable inference that Yavoroski and

Columbia used excessive force.

As to the due process claim, Plaintiff acknowledged in his deposition that he was not

placed in the LCP restricted housing unit.  Instead, he was confined in the LCP hospital unit.

(Dkt. 454-2, at 17-21.)  He testified that he was transferred from the LCP before any hearing

on placement in the RHU.  (Id. at 20.)  Yavoroski's affidavit states that an examination of the

LCP records revealed that the alleged disciplinary detention never occurred. (Dkt. 454-3, at

¶ 5).  For these reasons, no reasonable trier of fact could conclude Defendants violated

Plaintiff's due process rights.  Therefore, summary judgment will be granted in favor of

Defendants Yavoroski and Columbia.

>        D.        The PrimeCare Medical Defendants' Motion

Defendant Dr. Sprague and Defendant Bunting were, at all relevant times,

employees of PrimeCare Medical Inc. ("Primecare").  (Dkt. 451, at 1.)  PrimeCare, at all

relevant times, provided medical treatment to inmates at the PCCF under a written contract.

(Id.)  Defendants state that while Plaintiff was incarcerated at the PCCF, he received

medications to treat his pain and seizure disorder.  (Id. at p. 2; Dkt. 449-3, at 152 (Boomer

Deposition).)  Defendants further aver that Plaintiff was seen by outside physicians for

treatment and diagnostic testing on twenty (20) separate occasions while being held at the

PCCF.  (Id.; Dkt. 449-3, at 175.)  Defendants also aver that Plaintiff refused to take his

prescribed medications on roughly eighteen (18) separate occasions.  (Id.; Dkt. 449-3, at

178-92.)

Plaintiff states that when he arrived at the Pike County Correctional Facility, he

informed the "Defendants (sic) RN's" working at the facility of the March 21 incident at the

LCP and his subsequent trip to Mercy Hospital.  (Dkt. 109, at 15.)  Plaintiff alleges that

Defendants Dr. Sprague and Registered Nurse Bunting refused to provide him with the

appropriate neurological tests.  (Id. at p. 16.)  Plaintiff states that he had another violent

seizure on April 11, 2006, where he "banged around violently inside a steel and concrete

cell unit" and that Mr. Douglass S. Bills, Plaintiff's cell mate, witnessed this incident.  (Id.;

Dkt. 534-4, at 17; Dkt. 534-8, at 2.)  Plaintiff states that he sustained more pain, injuries and

spinal aggravations as a result of this incident, but when he was transported to the medical

area he was "denied any form of diagnostic test, exam, neural review or treatments" by

Defendants.  (Id.)

Plaintiff further alleges that during his time in the PCCF, Defendants Bunting and Dr.

Sprague, along with other registered nurses at the facility, conspired to move Plaintiff to a

unit that was some distance from the medical station, and therefore caused him great pains

to obtain medication.  (Id. at 23-25.)  Plaintiff also avers he slipped in the shower and

tripped while wearing leg shackles, falling hard to the concrete floor and aggravating the

injuries he alleges were untreated by Defendants. (Id. at 25.) Plaintiff alleges that Defendant Sprague approved the use of the leg shackles despite knowing that Plaintiff ambulated with a cane and suffered from spinal injuries. (Id. at 25.) Plaintiff states that even after this fall, he was refused any medical treatment or diagnostic tests for his injuries. (Id. at 26.) He does admit, however, that Defendant Dr. Sprague attempted to give him an x-ray, but that the machine "gave inadequate reading (sic)." (Id. at 26-27.)

Plaintiff also alleges, that throughout his time at the Pike County Correctional Facility Dr. Sprague and Bunting, along with all other registered nurses, harassed him by crushing and mixing his medications, and then made false allegations that Plaintiff was hoarding the medication to justify their actions. (Id. at 41.) Plaintiff further states that Dr. Sprague and Bunting cleared him to perform physical tasks that caused him physical pain. (Id. at 44.) Plaintiff further asserts that PrimeCare is responsible for the inadequate training of its employees and their alleged violations of Plaintiff's constitutional rights by denying him proper tests and medical treatment. (Id. at 16-17.)

Magistrate Judge Smyser recommended granting the PrimeCare Defendants' Motion for Summary Judgment based upon the absence of any expert testimony supporting the deliberate indifference claim. In this regard, it is undisputed that Plaintiff received medication and was referred to outside specialists for pain management and treatment of his seizure disorder on a number of occasions. (Id.) The basis for Plaintiff's claim appears

to be the delay in treatment and the manner in which medication was administered.

The recommendation to grant summary judgment in favor of the PrimeCare Defendants in neither clearly erroneous nor manifestly unjust. Plaintiff suffers from conditions for which expert medical care is warranted. Whether the delay in referrals to consultants or the manner in which medication was administered amount to deliberate indifference to a serious medical condition warrants expert testimony. Moreover, causation of any damage as a result of delay would plainly require expert opinion. Accordingly, the recommendation to grant the PrimeCare Defendants' motion will be adopted.

E.      The PCCF Nurses' Motion

Defendants Checho, Shaffer and Morieko were registered nurses working at the PCCF. Plaintiff again alleges proper treatment was denied and that Defendants gave clearance to the security staff to move Plaintiff to a housing unit far from the medical station. (Dkt. 109, at 16-17, 21-22.) Plaintiff also alleges that Nurse Checho did not stop the use of a chemical agent by other Defendants, and the chemical agent caused him to experience seizures. (Id. at 37-42.) Additionally, Defendant Morieko allegedly approved Plaintiff being strapped down even though he had experienced a violent seizure and was in enormous pain. (Id. at 32-33.) Plaintiff further alleges Defendants Checho, Shaffer and Morieko harassed him by crushing and mixing his pain and epilepsy medications together. (Id. at 41-42.) Plaintiff also states Defendants cleared him to perform physical tasks that caused

20

him pain.  (Id. at 44.)

The Magistrate Judge recommended granting Defendants' Motion for Summary

Judgment on the ground that Plaintiff has not presented a medical expert to substantiate a

claim of deliberate indifference.  In this regard, Plaintiff's verified complaint contains

information relating to treatment he received from these Defendants.  (Dkt. 109, at 26-27.)

Also Defendants have provided evidence that Plaintiff received medication, medical

attention, and saw specialists.  (Dkt. 449-3, at 152; Dkt. 449-3, at 175.)  No reasonable trier

of fact could conclude Defendants were deliberately indifferent to a serious medical need on

the record presented here.  Accordingly, the recommendation to grant the motion for

summary judgment filed by the PCCF Nurses will be adopted.

F.    The PCCF Defendants' Motion

The Magistrate divided these Defendants into three groups, (1) the PCCF itself, (2)

Warden Lowe and Assistant Warden Romance, and (3) Officers Kumburis, Lastarza,

Campos, Gattuso, DeMarco, Francis, Schwartz, and Schappert.[7]  Plaintiff's claims with

respect to this group of Defendants will be addressed in a similar fashion.

1. The PCCF

The Magistrate Judge recommended granting the Motion for Summary Judgment on

_____

[7] Defendant Schappert is referred to as "Shappert," "Schappert" and "Shepard" in
different places throughout the record.  I will refer to him as Defendant Schappert as that is
the spelling of his name in the affidavit he signed in June of 2009.  (Dkt. 559-3.)

behalf of the PCCF because it is a building and not a party that can be sued in a 42 U.S.C. § 1983 action. Meyers v. Schuylkill County Prison, No. 4:04-CV-1123, 2006 WL 559467, at *8 (M.D. Pa. Mar. 7, 2006) (holding that the Schuylkill County Prison is not a "person" within the meaning of Section 1983). Plaintiff does not object, and this recommendation will be adopted.

<u>           2.  Warden Rowe and Assistant Warden Romance</u>

Plaintiff alleges that Lowe and Romance are responsible for the inadequate training of the employees who violated his constitutional rights during his slip and fall in the shower. (Dkt. 109, at 23, 25, 41, 54.)  Plaintiff also alleges Defendant Lowe ignored his complaints about the denial of appropriate medical treatment.  (Id. at 24, 37, 42, 54.)

Magistrate Judge Smyser recommended granting summary judgment in favor of Defendants Lowe and Romance for all claims.  (Dkt. 545, at 36-38.)  Regarding deliberate indifference to Plaintiff's health, Magistrate Judge Smyser concluded "that [P]laintiff has not presented evidence from which a reasonable trier of fact could conclude that, in light of the undisputed fact that [Plaintiff] was seen by the prison physician, [D]efendants Lowe and Romance were deliberately indifferent to [Plaintiff's] serious medical needs."  (Id. at 37.) Regarding the shower incident, Magistrate Judge Smyser stated that because it was undisputed Plaintiff could ambulate and move freely without his cane while incarcerated, "no reasonable trier of fact could conclude that [D]efendants Lowe and Romance were

deliberately indifferent to a substantial risk of harm to [Plaintiff] by allegedly giving clearance to security staff to shackle [Plaintiff] while he was in the showers." (Id.) Lastly, regarding the inadequate training of staff, Magistrate Judge Smyser concluded that Plaintiff had not presented evidence that any alleged inadequate training of the staff by Defendants Lowe and Romance resulted in a constitutional violation. (Id.)

Prison official defendants cannot "be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). "Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004)

Plaintiff has provided no evidence to show that Defendants Lowe and Romance were deliberately indifferent to his medical needs. Plaintiff submitted many grievance forms regarding his treatment, but they only show disagreement as to what treatment he was given, not a lack of treatment. (See Dkt. 534-6, Dkt. 534-7, Dkt. 535, Dkt. 536.) Furthermore, Plaintiff acknowledges he received medical treatment and medication at the facility. (Dkt. 468, 152-58.) From this evidence, a reasonable fact finder could not find that Lowe and Romance were deliberately indifferent to Plaintiff's serious medical needs.

Furthermore, there is no evidence that a lack of training caused Plaintiff to suffer the abridgement of a constitutional right. Accordingly, the recommendation granting summary judgment in favor of Defendants Lowe and Romance will be adopted.

### 3. Defendants Kumburis, Lastarza, Campos, Gattuso, DeMarco, Francis, Schwartz, and Schappert

Plaintiff alleges that Defendant Gattuso and Campos (along with Defendants Bunting and Dr. Sprague) conspired to have Plaintiff placed on the "K" or "H" units, which were far walks from the medical station and caused Plaintiff great pain. (Id. at 23-24.) He alleges that on May 26, 2006, he was placed in leg shackles when using the shower, and slipped and fell to the concrete floor, "aggravating his untreated, undiagnosed spinal injuries." (Id. at 25.) Plaintiff was subsequently moved to SNU-housing near the medical facility, where he alleges Gattuso, Campos, Schwartz and DeMarco "continuously harassed and threatened" him. (Id. at 27.) This allegedly included retaliation, as well as forcing him to perform physical acts, including cleaning, that caused great pain and suffering. (Id. at 27-28, 43-45.) Plaintiff filed grievances while he allegedly was retaliated against, harassed, and denied appropriate medical treatment. (Id. at 28-29.)

Plaintiff alleges that on July 7, 2006, Defendants Francis and Shappert assaulted him and conspired to fabricate criminal charges against him while he was in his cell. (Id. at 29.) Defendant Shappert allegedly threatened Plaintiff for going "against the grain" by testifying against Sergeant Wincovitch, who had been threatened by a fellow corrections

24

officer.  (Id. at 29-30.)  Defendant Shappert supposedly entered Plaintiff's cell and pushed the emergency response button before jumping on Plaintiff and assaulting him.  (Id. at 30.) Defendants Shappert and Francis then allegedly submitted a fabricated misconduct report and false criminal charges with the Pennsylvania State Police, accusing Plaintiff of spitting in their faces.  (Id.)  Plaintiff states that he was very upset about being setup and "spoke his verbal mind wording how he felt."  (Id. at 31.)  Defendant Campus then arrived and ordered Plaintiff to be strapped to a restraint chair, with his hands behind his back, despite allegedly knowing that Plaintiff was a disabled person with serious spinal injuries.  (Id. at 31-32.) Plaintiff states he was strapped down in this position for over an hour while he was moved to a mental health observation cell, and experienced an epileptic seizure that nearly broke his neck, shoulders, hands, wrists and arms because of the nature of the restraints.  (Id. at 32.)

Defendants Kumburis and Lastarza conducted an institutional disciplinary hearing relating to the alleged spitting incident on July 25, 2006.  (Id. at 33.)  Plaintiff alleges Kumburis and Lastarza violated his due process rights by conducting the hearing and convicting him based only on hearsay evidence, and not physical or DNA evidence.  (Id. at 33-34.)

On August 12, 2006, a number of correctional officers, including Defendant DeMarco, had a problem with an inmate in the cell next to Plaintiff.  (Id. at 37.)  DeMarco

used a chemical agent in the cell, and Plaintiff alleges DeMarco, who had knowledge of Plaintiff's epilepsy, had adequate time to remove Plaintiff to protect him from the chemical agent. (Id.) All prisoners and corrections officers in the area were allegedly choking and coughing on the chemical agent, and Plaintiff at this time experienced a violent seizure not witnessed by any guards. (Id. at 38.) As a result of this, Plaintiff aggravated his spinal injuries. (Id.) Todd Featherstone and Mamadi Bratcher, fellow inmates, have filed statements that they observed Plaintiff suffering the seizure. (See Dkt. 535, 13-15.)

Shortly thereafter, on August 31, 2006, Defendants Campos and Kumburis again prepared to use the chemical agent on an inmate near Plaintiff with whom they were having problems. (Id. at 40.) Plaintiff states he pled with Defendant Campos to remove him from the area before using the chemical agent, but Defendant Campos ignored his pleas and used the agent. (Id.) Plaintiff states that he again began coughing and then experienced another seizure, resulting in further pain and injuries. (Id. at 40-41.)

In November of 2006, Campos allegedly forced Plaintiff to perform cleaning duties, and then stripped all the items from Plaintiff's room when he refused to do so. (Id. at 45-46.) This left Plaintiff lying on a steel bed frame when he experienced another seizure. (Id. at 46.) Plaintiff was transported by stretcher to another cell unit, and experienced another seizure inside that cell. (Id.) This group of Defendants is also accused of verbally harassing Plaintiff while he performed stretches recommended by his neurologist to ease

26

his back pain.  (Id. at 51.)

Magistrate Judge Smyser found that because Plaintiff was observed to move freely about the facility without his cane while incarcerated no reasonable trier of fact could conclude Defendants Gattuso, Campos or Lastarza violated Plaintiff's rights by moving him to a housing unit distant from the medical station.  Magistrate Judge Smyser also concluded that no reasonable trier of fact could conclude Defendants Gattuso, Campos, Schwartz and DeMarco violated Plaintiff's constitutional rights by ordering him to clean his cell or disciplining him for failing to obey the orders because no medical restrictions were placed on Plaintiff at the time Plaintiff was required to perform these tasks.  Magistrate Judge Smyser next analyzed the verbal harassment claims. He recommended granting summary judgment in favor of Defendants Gattuso, Campos, Schwartz, and DeMarco since verbal harassment is insufficient to deprive a prisoner of protected liberty interests and does not constitute cruel and unusual punishment.

Magistrate Judge Smyser did not perform a summary judgment analysis with respect to the excessive force and retaliation claims arising from the July 7, 2006 incident because Defendants had not addressed these claims in their summary judgment motion.  Defendant Campos similarly did not address Plaintiff's claim that he was wrongfully placed in the restraint chair and subject to injuries; consequently, Magistrate Judge Smyser did not address the claims.  (Id.)

27

Regarding the due process claim against Defendants Kumburis and Lastarza, Magistrate Judge Smyser concluded that Plaintiff was not subject to atypical and significant hardships in relation to the ordinary incidents of prison life, and therefore he did not have a liberty interest protected by the Due Process Clause. (Id. at 44-45.) The Magistrate Judge concluded that absent this interest, Plaintiff could not establish a due process violation. (Id. at 45.)

Magistrate Judge Smyser next turned to the alleged retaliation claim arising out of the spitting incident. Because it is undisputed that Plaintiff entered a plea of guilty to the charges of spitting in Francis' face, Magistrate Judge Smyser recommended granting summary judgment in Francis' favor since no reasonable trier of fact could conclude the charges were filed in retaliation for Plaintiff's constitutionally-protected conduct. (Id. at 46-47.) Magistrate Judge Smyser recommended not granting summary judgment for Defendant Schappert, however, because Schappert, according to Plaintiff's verified complaint, made statements during the assault that indicated he was upset about Plaintiff's constitutionally protected activity and then later changed his story at the preliminary hearing on the criminal charges to indicate Plaintiff did not intentionally spit on him. (Id. at 45-46.) Magistrate Judge Smyser stated that, based on this information, a reasonable trier of fact could find the charges filed by Defendant Schappert were in retaliation for Plaintiff's constitutionally-protected conduct. (Id. at 46.)

28

Regarding the use of the chemical agent, Defendants DeMarco, Campos and Kumburis did not address the claims arising from the events, and Magistrate Judge Smyser therefore did not issue a recommendation. Defendants object to the claims that Magistrate Judge Smyser stated they did not address prior to his Report and Recommendation. (Dkt. 547; Dkt. 559.) These include the claim against Defendant Schappert for retaliation for filing misconduct and criminal charges against Plaintiff, the claim against Francis and Schappert for excessive force, the claim against Campos for use of the restraint chair, and the claim against DeMarco, Campos and Kumburis regarding the use of the chemical agent.

### a. The Housing Assignment Claim against Defendants Gattuso, Campos and Lastarza

Plaintiff argues the housing assignment he received, which made him walk further to the medical facility violated his rights, and that Gattuso, Campos and Lastarza conspired to cause him this pain. (Dkt. 109, at 23-24.) Plaintiff has provided no evidence that such a conspiracy existed. Furthermore, Plaintiff was under no medical restrictions at the time of the housing placement. On these facts, Magistrate Judge Smyser correctly concluded that no reasonable trier of fact could conclude Defendants Gattuso, Campos or Lastarza violated Plaintiff's rights by moving him to the housing unit that was distant from the medical station, and therefore the recommendation to grant summary judgment will be adopted.

### b. Forced Cleaning of Cell Claim Against Defendants Gattuso, Campos, Schwartz and DeMarco

Plaintiff claims that being forced to clean his cell, and being disciplined for failing to do so, violated his rights and caused him severe physical pain. Plaintiff, however, has provided no evidence the forced cleaning was punishment or aimed at causing him pain. Moreover, there is no dispute that when Plaintiff had no medical restrictions, other than a lower bunk assignment and a right to have a cane, at the time he was required to clean his cell. When medical restrictions were put on Plaintiff that stated he should not be performing these duties, he was no longer forced to do them. (Dkt. 468, at 52.) From these facts, a reasonable trier of fact could not conclude Defendants engaged in conduct with an intention to cause Plaintiff pain and suffering. Accordingly, Magistrate Judge Smyser's recommendation to grant summary judgment in favor of Gattuso, Campos, Schwartz, and DeMarco on this claim will be adopted.

### c. Verbal Harassment of Plaintiff by Defendants Gattuso, Campos, Schwartz and DeMarco

Plaintiff alleges the verbal harassment he received from this set of Defendants violated his rights. It is clear, however, that "[s]tanding alone, simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws." Greer v. York County Prison, 07-CV-2248, 2008 WL 3819866, at *2 (M.D. Pa. Aug. 11, 2008) (citing Dewalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000)). "Mere words spoken to a prisoner by a correctional officer, even when those words are harsh, do not amount to a violation of the prisoner's civil rights."

Id. (citing Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)).  Thus, Magistrate Judge Smyser's recommendation to grant summary judgment in favor of Defendants on this claim will be adopted.

d. Claims arising from the alleged assault and fabricated charges by Schappert and Francis

Defendants address the substance of the alleged assault as presenting excessive force and retaliation claims for the first time in their objections to the Report and Recommendation. Defendants argue there are no material factual disputes regarding their actions.  Defendants aver that the force they used was entirely reasonable given the situation.  Defendant Francis was on duty as a Programs Rover, and responded to a call for assistance from Officer Schappert.  (Dkt. 559-2, ¶¶ 3- 4.)  When Defendant Francis arrived he saw Plaintiff confront Defendant Schappert and Spencer.  (Id. at ¶ 4.)  At this time, Plaintiff spat upon Defendant Francis.  (Id. at ¶ 7.)   Corrections Officer Spencer was reportedly at the scene with Schappert before Francis arrived, and states that he grabbed Plaintiff's arm because Plaintiff was attempting to hit Francis.  (Dkt. 559-5, at 1.)  At that time, Officers Sobolewski, Paterno and Thomas entered the cell to help subdue Plaintiff. (Id. at 2.)  Officer Paterno states that when he arrived, Defendants Schappert and Francis, along with Officer Spencer, were struggling to restrain Plaintiff, and that Plaintiff was threatening to harm the officers.  (Dkt. 559-7, at 1-2.)  When Officer Sobolewski arrived on the scene, Plaintiff had been subdued and he was able to place cuffs on Plaintiff's wrists,

31

but Plaintiff continued to lunge at the officers in the cell. (Dkt. 559-6, at 1-2.) Plaintiff was placed in the restraining chair, and allegedly threatened Defendant Schappert by stating "Wait until I get my hands on you. I am going to kick you're a\*\*." (Dkt. 559-3 ¶ 11.) Plaintiff appeared in front of a disciplinary board in relation to these incidents and was convicted of spitting at Defendants Schappert and Francis, as well as threatening Schappert and refusing to return the newspaper he was allowed for recreation time. (Dkt. 559-9, at 2.)

The force used may have been entirely reasonable if Defendants' story and facts are true, but Plaintiff states he was attacked and has verified his complaint. A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge. Wilson v. Maben, 676 F. Supp. 581, 583 (M.D. Pa. 1987); see Reese v. Sparks, 760 F.2d 64, 67 (3d Cir. 1985). There are factual disputes surrounding the events in the cell and they must be determined by a trier of fact in order to rule on whether the force used was reasonable.

This dispute also relates to Plaintiff's retaliation claim against Defendant Schappert concerning the filing of the misconduct and criminal charges. If it is determined that Defendant Shappert showed up at Plaintiff's cell and assaulted him, as Plaintiff alleges, it would affect the outcome of Plaintiff's retaliation claim. Accordingly, Schappert is not entitled to summary judgment on the retaliation claim.

As to the retaliation claim against Francis, however, Plaintiff does not dispute that he

entered a guilty plea on charges relating to the actions he took against Francis. Under these circumstances, the recommendation to grant summary judgment in favor of Francis on the retaliation claim is not clearly erroneous or manifestly unjust.

### e. Claim against Defendant Campos for use of restraining Chair

The facts pertaining to this claim, arising as it does out of the alleged assault, are in dispute. Accordingly, summary judgment on this claim is inappropriate.

### f. Disciplinary confinement claims

Plaintiff alleges that his due process rights were violated by being placed in disciplinary confinement for 42 days by the disciplinary board, including board members Kumburis and Lastarza. Magistrate Judge Smyser employed the analysis mandated by Sandin v. Conner, 515 U.S. 472 (1995). Sandin, however, is not the appropriate precedent because it applies to convicted prisoners, not pretrial detainees. See Fuentes v. Wagner, 206 F.3d 335, 342 n.9 (3d Cir. 2000) ("Sandin concerned punishment of a sentenced prisoner, and therefore required a completely different analysis."). Magistrate Judge Smyser's conclusion, however, is still correct.

Although the rights enjoyed by pretrial detainees are greater than those enjoyed by convicted prisoners, because the former cannot be punished prior to conviction, prisons are allowed some leeway in making decisions regarding legitimate operations concerns. Bell v. Wolfish, 441 U.S. 520, 540 (1979). "Restraints that are reasonably related to the

33

institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id.

The actions taken by the disciplinary board appear to fall well within the ample discretion accorded prison administrators in dealing with pretrial detainees. Contrary to Plaintiff's argument, there is no prohibition on the consideration of hearsay evidence in such a proceeding and there was no requirement to obtain DNA evidence pertaining to the alleged spitting. It is clear that there was some evidence upon which to base the Hearing Board's determination. Accordingly, Magistrate Judge Smyser's recommendation to grant summary judgment in favor of Defendant Kumburis and Lastarza on the due process claim will be adopted.

g. Claims relating to the use of the chemical agent

Defendants DeMarco, Campos and Kumburis state that Plaintiff was evaluated by the facility nurse after the initial incident on August 12, 2006, where Plaintiff alleges he had a seizure from the chemical agent used. (See Dkt. 559-11.) Plaintiff was taken to the medical room where his vital signs were found to be normal. (Id.) The medical professionals never informed the prison officials that Plaintiff could not be exposed to the chemical agent after the initial incident. After the second incident, where Plaintiff allegedly experienced another seizure, Plaintiff was again examined by a nurse. (See Dkt. 559-12.)

After the second incident, the prison officials were still not notified by medical professionals that Plaintiff needed to be removed from any area where the chemical agent was used.

Defendants assert that they cannot be liable because they were not aware Plaintiff was overly sensitive to the gas, and therefore did not take actions that were deliberately indifferent to Plaintiff's serious medical needs. "Acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." King v. County of Gloucester, 302 F. App'x 92, 97 (3d Cir. 2008) (quoting Farmer v. Brennan, 511 U.S. 825, 836 (1994)). "Therefore, [Plaintiff is] required to show that the prison officials knew of a substantial risk of serious harm – which may be inferred if the risk was obvious– and failed to act despite that knowledge." Id. The conduct must constitute "an unnecessary and wanton infliction of pain contrary to contemporary standards of decency." Reynolds v. Wagner, 128 F.3d 166, 174 (3d Cir. 1997) (quoting Helling v. McKinney, 509 U.S. 25, 32 (1993)).

Plaintiff has failed to provide any evidence that Defendants knew of a substantial risk of serious harm before dispersing the chemical agent on either August 12 or August 31, 2006. Plaintiff states that he experienced tremendous pain from these incidents, but even if that were true it does not show that Defendants DeMarco, Campos and Kumburis were aware of this. Also, a review of the nursing reports from the first incident would provide no reason for Defendants to be aware of a serious risk as Plaintiff was responsive when the

nurse arrived, and his vital signs were normal.  For these reasons, the Magistrate Judge's

Recommendation to grant summary judgment in favor of DeMarco, Campos and Kumburis

in relation to their use of the chemical agent will be adopted.

      G.     <u>Motion for Sanctions filed by Defendant Maritato</u>

      On November 14, 2008, Defendant Maritato filed a Motion for Sanctions with his

Response in Opposition to Plaintiff's Third Motion for Leave to Respond. (Dkt. 516.)

Magistrate Judge Smyser recommended denying the motion because Defendant Maritato

did not indicate he provided Plaintiff with the 21-day safe-harbor period set forth in Rule

11(c).  (Dkt. 545, at 49-50.)  Defendant Maritato has not objected to the recommendation,

and it will be adopted.

<u>IV. CONCLUSION</u>

      For the reasons set forth above, the Motions for Summary Judgment filed on behalf

of the Pocono Mountain Regional Police Department Defendants (Dkt. 462), the LCP

Medical Defendants (Dkt. 456), the LCP Officers (Dkt. 453), the PrimeCare Defendants

(Dkt. 449), and the PCCF Nurses (Dkt. 466) will be granted.  The Motion for Summary

Judgment filed on behalf of the PCCF Defendants (Dkt. 459) will be granted in part.

Specifically, the motion will not be granted on the claim of excessive force brought against

Defendants Francis and Schappert, the claim arising from the use of the restraining chair

brought against Defendant Campos, and the retaliation claim brought against Defendant

Schappert.[8]  Finally, Defendant Maritato's Motion for Sanction (Dkt. 516) will be denied.  An

appropriate Order follows.


                                        s/ Thomas I. Vanaskie
                                        Thomas I. Vanaskie
                                        United States District Judge

---

[8] As a result of this ruling, there will remain in this case only Defendants Francis, Schappert, and Campos.  Essentially, the claims remaining against these Defendants revolve around the incident that occurred in July of 2006.  It should be noted that Boomer has made reference to surveillance videos of this incident, but the Court's records do not include such evidence.  The video that is part of the Court records concerns Plaintiff's refusal to accept a new housing assignment.  Significantly, this video shows a belligerent and physically hostile Plaintiff who moves around his cell without any difficulty or apparent distress.  It appears from the video that Plaintiff is spilling water from the toilet in the cell he is occupying in anticipation of defending against a forced removal from that cell.  It also shows Plaintiff preparing for physical aggression.  The video shows that PCCF personnel displayed remarkable patience and restraint.  Ultimately, it appears that Plaintiff was removed from the cell without the use of force.

RODNEY BOOMER,          :     CIVIL NO. 3:06-CV-0850

            :

       Plaintiff        :     (Judge Vanaskie)

            :

      v.            :

            :

SGT. HARRY LEWIS, et al.,     :

            :

       Defendants    :

## ORDER

NOW, THIS 9th DAY OF SEPTEMBER, 2009, for the reasons set forth in the foregoing Memorandum, IT IS HEREBY ORDERED THAT:

1. The Report and Recommendation of Magistrate Judge J. Andrew Smyser (Dkt. 545) is ADOPTED IN PART.

2. The Motion for Summary Judgment filed on behalf of PrimeCare Medical, Inc., Patti Bunting, and William Sprague (Dkt. 449) is GRANTED, and the Clerk of Court shall enter judgment in their favor and against Plaintiff.

3. The Motion for Summary Judgment filed on behalf of the Lackawanna County Prison and defendants Columbia, Donate, Walsh, and Yavorski (Dkt. 453) is GRANTED, and the Clerk of Court shall enter judgment in their favor and against Plaintiff.

4. The Motion for Summary Judgment filed on behalf of Defendants Fox and Zagato (Dkt. 456) is GRANTED, and the Clerk of Court shall enter judgment in their favor and

against Plaintiff.

5. The Motion for Summary Judgment filed on behalf of the Pike County Correctional Facility and Defendants Campos, DeMarco, Gattuso, Kumburis, Lowe, Romance, Schwartz, Francis, and Schappert (Dkt. Entry 459) is GRANTED IN PART. The Motion for Summary Judgment is denied as to the excessive force claim filed against Defendants Francis and Schappert, the retaliation claim filed against Defendant Schappert, and the claim pertaining to the use of a restraint chair against Defendant Campos. In all other respects, the Motion for Summary Judgment (Dkt. Entry 459) is GRANTED, and the Clerk of Court shall enter judgment in favor of the Pike County Correctional Facility and Defendants DeMarco, Gattuso, Kumburis, Lowe, Romance, and Schwartz, and against Plaintiff.

6. The Motion for Summary Judgment filed on behalf of the Pocono Mountain Regional Police Department and Defendants Lamberton, Lutz, Rice, Robson, Smelas, Stapleton, and Lewis (Dkt. Entry 462) is GRANTED, and the Clerk of Court shall enter judgment in their favor and against Plaintiff.

7. The Motion for Summary Judgment filed on behalf of Defendants Checho, Shaffer, and Moreiko (Dkt. 466) is GRANTED, and the Clerk of Court shall enter judgment in their favor and against Plaintiff.

8. The Motion for Sanctions filed on behalf of Defendant Maritato (Dkt. 516) is

DENIED.

      8. A telephonic scheduling conference with counsel for the remaining Defendants (Francis, Schappert, and Campos) and Plaintiff shall be conducted on Wednesday, October 21, 2009 at 9:00 a.m. The Clerk of Court shall make the appropriate arrangements for the conference call.

                           s/ Thomas I. Vanaskie
                           Thomas I. Vanaskie
                           United States District Judge